## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| **GOTV NETWORKS,**<br><br>Plaintiff<br><br>v.<br><br>**THE KROGER CO.,**<br><br>Defendant | **Case No. 2:26-cv-00607**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff GoTV Networks LLC ("Plaintiff" or "GoTV") hereby asserts the following claims for patent infringement against The Kroger Co. ("Defendant"), and alleges, as follows:

## NATURE OF THE ACTION

1.    This is an action for patent infringement arising under 35 U.S.C. § 1 *et seq*.

## PARTIES

2.    GoTV is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business at 300 Delaware Avenue, Suite 210, Wilmington, Delaware 19801.

**3.**    Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Ohio with a principal place of business at 1014 Vine Street, Cincinnati, Ohio 45202. Defendant operates businesses in multiple locations in this jurisdiction.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Upon information and belief, Defendant is subject to personal jurisdiction of this Court based upon it having regularly conducted business, including the acts complained of herein, within the State of Texas and this judicial district and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 because Defendant has committed acts of infringement and has regular and established places of business in this judicial district.

## OVERVIEW OF THE ACCUSED SYSTEM

7.      On information and belief, Defendant is one of the largest grocery retailers in the United States. It was founded in 1883. The company operates approximately 2,700 supermarkets and multi-department stores across the United States under a variety of banner names. It employs more than 400,000 associates. The company generated approximately $147.6 billion in sales during fiscal year 2025.

8.      Over the past decade, Kroger has invested heavily in digital and omnichannel capabilities to meet evolving consumer expectations. Kroger's customers increasingly rely on mobile devices to access product information, digital coupons, personalized promotions, pricing, shopping lists, pharmacy services, and order fulfillment options. Through its mobile applications and digital platforms, Kroger enables customers to interact with its stores both remotely and while shopping in person. Customers frequently use smartphones to make purchasing decisions in real time as they navigate store aisles, compare products, locate items, redeem digital offers, and manage pickup or

delivery orders. These interactions occur under a variety of network conditions, including in-store Wi-Fi and cellular data connections.

9.      To meet these expectations, Kroger has developed a digital ecosystem that integrates its grocery retail operations, loyalty programs, pharmacy services, and e-commerce platforms into a unified customer experience accessible through mobile devices. The Kroger Mobile Application allows customers to browse products, access personalized digital coupons, manage shopping lists, view loyalty rewards, place pickup and delivery orders, refill prescriptions, and track order status. Information regarding product availability, promotions, rewards, and order fulfillment is updated through Kroger's digital systems as conditions change. Kroger also provides customer support and account-management functionality through its digital platforms. In addition, Kroger's mobile website offers many of the same capabilities through a web browser, enabling customers to access Kroger's digital services without downloading a dedicated mobile application.

10.      At the heart of this ecosystem lies a network of backend servers. These servers serve as the central control system for all real-time communications between customer devices and Kroger's core business platforms. These servers receive incoming connection requests from client software components running within the Kroger Mobile Application, the Live Chat System, and the Mobile Website. They then dynamically manage the communication protocols to ensure uninterrupted service. Specifically, the servers automatically implement full-duplex or HTTP polling/tunneling protocols based on the quality of the wireless link at any given moment. They do this while maintaining a standardized application programming interface. This enables features like real-time inventory lookups, live agent chat, and order status updates to function smoothly across diverse network conditions and device types. Collectively, these backend servers are the "Accused System".

## COUNT I
### (Infringement of U. S. Patent No. 8,009,619)

11.     GoTV incorporates paragraphs 1 through 10 as if fully set forth herein.

12.     GoTV is owner, by assignment, of all right, title, and interest in and to U.S. Patent No. 8,009,619 (the "'619 Patent"), entitled SERVER-SIDE WIRELESS COMMUNICATIONS LINK SUPPORT FOR MOBILE HANDHELD DEVICES, which issued on August 30, 2011.

13.     The '619 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

14.     Defendant has been and is now infringing literally and/or under the doctrine of equivalents one or more claims of the '619 Patent under 35 U.S.C. § 271 by making and using the Accused System in the United States without authority.

15.     Defendant has induced and continues to induce infringement of the '619 Patent by encouraging users of the Accused System to practice the claims of the '619 Patent.

16.     Claim 9 of the '619 Patent recites:

9.     A server, comprising:

a processor; and

a memory coupled to the processor, the memory storing processor readable code that, when executed by the processor, is configured to cause the processor to:

receive, via a communications network, a request for a communications link from a client communications component executing on a handheld device;

establish a wireless communications link with the handheld device by using a server communications interface;

automatically select, as an optimized protocol, a socket full-duplex connection protocol if a quality of the wireless communications link is above or equal to a threshold, or one of a socket half duplex connection protocol, an HTTP tunneling protocol, and an HTTP polling protocol if the quality of the wireless communications link is below the threshold; and

automatically implement the optimized protocol between the client communications component and the server communications interface, the optimized protocol being implemented while maintaining a standardized application programming interface (API) for the server communications interface, the communications link being established via the client communications component functioning with a device API component to configure hardware of the handheld device.

17.     More particularly, the Accused System includes backend servers that provide real-time communications with handheld devices such as iPhones or Android phones running the Kroger Mobile Application, Live Chat System, and Mobile Website. These servers include a processor. They also include memory coupled to the processor. The memory stores code that, when executed, causes the processor to perform the functions recited in the claim.

18.     For example, when a customer opens the Kroger Mobile Application on a mobile device to check live inventory, the Accused System receives a request for a communications link from a

client communications component executing on the handheld device via a communications network. The Accused System then establishes a wireless communications link with the handheld device by using a server communications interface. This occurs when the Kroger backend responds to a handshake request from the mobile application to enable real-time updates. The same process happens when a user initiates a chat session through the mobile website.

19.     The Accused System then automatically selects a socket full-duplex connection protocol such as WebSocket. It does this when the quality of the wireless communications link from the mobile device is above or equal to a threshold. For example, it selects WebSocket when ping response times are below three seconds during real-time inventory checks or live chat. The Accused System selects one of a socket half duplex connection protocol, an HTTP tunneling protocol, and an HTTP polling protocol such as HTTP long polling when the quality of the wireless communications link is below the threshold. This happens in a busy store with degraded signal.

20.     Finally, the Accused System automatically implements the optimized protocol between the client communications component on the mobile device and the server communications interface. It upgrades to WebSocket for bidirectional messaging during live chat or inventory updates when conditions allow. It uses HTTP long polling when connectivity degrades. The optimized protocol is implemented while maintaining a standardized application programming interface. The communications link is established via the client communications component functioning with a device API component such as NWPathMonitor on iOS or ConnectivityManager on Android to configure hardware of the handheld device and sustain the session.

21.     GoTV has been damaged by Defendant's infringing conduct in an amount no less than a reasonable royalty.

## COUNT II
### (Infringement of U. S. Patent No. 8,060,594)

22.    GoTV incorporates paragraphs 1 through 10 as if fully set forth herein.

23.    GoTV is owner, by assignment, of all right, title, and interest in and to U.S. Patent No. 8,060,594 (the "'594 Patent"), entitled CLIENT-SIDE WIRELESS COMMUNICATIONS LINK SUPPORT FOR MOBILE HANDHELD DEVICES, which issued on November 15, 2011.

24.    The '594 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

25.    Defendant has been and is now infringing literally and/or under the doctrine of equivalents one or more claims of the '594 Patent under 35 U.S.C. § 271 by making and using the Accused System in the United States without authority.

26.    Defendant has induced and continues to induce infringement of the '594 Patent by encouraging users of the Accused System to practice the claims of the '594 Patent.

27.    Claim 1 of the '594 Patent recites:

1. A method, comprising:

receiving a request for a communications link from an application executing on a handheld device;

accessing a device API component to configure device hardware to implement the communications link;

establishing a wireless communications link with a server;

automatically implementing, at a first time, a first protocol between a client communications component of the handheld device and the server based on a type of the wireless communications link and a type of

the handheld device, the communications link being established via the client communications component functioning with the device API component to configure hardware of the handheld device, the client communications component including a hardware abstraction component for translating between the client communications component and device specific hardware functions of the handheld device, the hardware abstraction component is configured to enable the client communications component to implement a stable communications API when installed on multiple different device types; and

automatically implementing, at a second time after the first time, a second protocol, different from the first protocol, between the client communications component and the server based on a quality of the wireless communications link at the second time, the first protocol and the second protocol are each one of a socket full-duplex connection protocol, a socket half duplex connection protocol, an HTTP tunneling protocol, and an HTTP polling protocol.

28.    More particularly, the Accused System includes the Kroger Mobile Application executing on handheld devices such as iPhones and Android smartphones. The Accused System operates on the client side, that is, within the mobile application installed on the user's device and performs the method steps recited in Claim 1 when a user engages features such as Live Chat, real-time inventory lookup, on the Kroger mobile application or the Kroger Mobile Website.

29.     When a customer opens the Kroger Mobile Application and navigates to a feature requiring real-time data such as initiating a Live Chat session with a customer service agent or checking live product availability, the application's client communication component (Chat API or any other API) receives a request from the user to establish a communications link with the Kroger backend servers.

30.     In response to the communications link request, the Accused System accesses device-native API components to configure the underlying hardware of the handheld device. On iOS devices, this includes accessing NWPathMonitor from Apple's Network framework to evaluate and configure the device's wireless network interface. On Android devices, this includes accessing ConnectivityManager to assess network availability and configure the appropriate hardware radio interface such as Wi-Fi or cellular for the communications link.

31.     The Accused System's client communications component establishes a communications link with the Kroger backend server.

32.     The Accused System automatically selects and implements a HTTP protocol such a HTTP polling. This selection is made based on two factors: (1) the type of wireless communications link available at that moment for example, whether the device is connected via Wi-Fi or a cellular network or when the quality of the wireless communications link from the mobile device is above or equal to a threshold and (2) the type of handheld device, such as whether the user is on an iPhone or an Android phone (indicated by the user agent, Sec-Ch-Ua, and Sec-Ch-Ua-Platform field in the communication request from client to server).

33.     This process is carried out by the client communications component of the Kroger mobile application. The client communications component includes a hardware abstraction component specifically, the Android Hardware Abstraction Layer (HAL) on Android devices, and the

equivalent abstraction layer on iOS. This hardware abstraction component translates between the client communications component and the device-specific hardware functions of the handheld device. The APIs embedded in the Kroger Mobile application provides a stable, standardized communications API that operates consistently regardless of whether the application is installed on an iPhone, an Android device, or other supported device types, thereby enabling the client communications component to implement a stable communications API across multiple different device types.

34.     The Accused System continuously monitors the quality of the wireless communications link. The Accused System selects one of a socket full duplex connection protocol such as WebSocket if the quality of the wireless communication link is above a threshold. The system selects a socket half duplex connection protocol, an HTTP tunneling protocol, and an HTTP polling protocol such as HTTP long polling when the quality of the wireless communications link is below the threshold. If conditions improve, the system may transition from HTTP long polling to a WebSocket connection. In all cases, both the first protocol and the second protocol are drawn from the set comprising: a socket full-duplex connection protocol, a socket half-duplex connection protocol, an HTTP tunneling protocol, and an HTTP polling protocol.

35.     GoTV has been damaged by Defendant's infringing conduct in an amount no less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

A.     An adjudication that Defendant has infringed the '619 patent and the '594 patent;

B.      An award of damages pursuant to 35 U.S.C. § 284 to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.      An award of pre-judgment and post-judgment interest on the damages and costs; and

D.      An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury, Under Fed. R. Civ. P. 38.

Dated:  July 24, 2026                              Respectfully Submitted

                                                   */s/ Raymond W. Mort, III*
                                                   Raymond W. Mort, III
                                                   Texas State Bar No. 00791308
                                                   raymort@daignaultiyer.com
                                                   **DAIGNAULT IYER LLP**
                                                   111 Congress Ave, Suite 500
                                                   Austin, TX 78701
                                                   Tel/Fax: (512) 865-7950

                                                   **ATTORNEYS FOR PLAINTIFF**